FOR PUBLICATION

FILED & ENTERED

APR 15 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>RAPHAEL MENSE and<br>COTTONSMITH, LLC,<br><br><br><br><br><br><br><br>                                    Debtors.<br>_____ | Case No. 2:14-bk-11195-PC<br>(Jointly Administered with<br>Case No. 2:14-bk-11194-PC)<br><br>Chapter 11<br><br>**MEMORANDUM DECISION**<br><br>Date:    April 2, 2014<br>Time:   9:00 a.m.<br>Place:  United States Bankruptcy Court<br>           Courtroom # 1468<br>           255 East Temple Street<br>           Los Angeles, CA  90012 |

Before the court are two motions filed by creditor, Fred Kayne ("Kayne"):  (1) Motion by Judgment Creditor Fred Kayne for Relief from the Automatic Stay under 11 U.S.C. § 362 (Action in Non-Bankruptcy Forum) ("Kayne's Stay Relief Motion"); and (2) Motion by Judgment Creditor Fred Kayne for Entry of Order Dismissing Debtors' Chapter 11 Cases ("Kayne's Dismissal Motion").  Debtors, Raphael Mense ("Mense") and Cottonsmith, LLC ("Cottonsmith") oppose the motions.  Having considered the motions and oppositions thereto,

the replies, the evidentiary record,[1] and arguments of counsel, the court will grant the relief requested by Kayne based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a),[2] as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

## I. STATEMENT OF FACTS

Cottonsmith is a limited liability company. Mense is the managing member of Cottonsmith, and owns 90% of the outstanding shares of the corporation. The remaining 10% of Cottonsmith is owned by the Fred and Lenore Kayne Family Trust (the "Trust"). Prior to July 2011, "Cottonsmith was in the business of manufacturing and importing so-called 'blank' tee shirts for sale to customers who dye and/or screen print them according to customer specifications."[3] Kayne was also the majority owner of Cottonsmith's primary customer, Fortune Fashion Industries, LLC ("FFI"). Pursuant to an agreement between the parties, Kayne advanced $750,000 from the Trust to Cottonsmith in approximately September 2010, to be used solely for the purpose of purchasing fabric to fulfill FFI's orders. The advance was to be repaid by proceeds from the sale of the fabric or tee shirts made by FFI with the fabric. By July 2011, however, Cottonsmith had ceased doing business and had liquidated its assets. Kayne demanded that Cottonsmith repay the advance and disburse his capital account at Cottonsmith which at the time was in excess of $700,000. Cottonsmith refused and Kayne sued.

---

[1] The court grants Kayne's Request for Judicial Notice in Support of: (1) Notice of Motion and Motion by Judgment Creditor Fred Kayne for Relief from the Automatic Stay under 11 U.S.C. § 362 (Action in Non-Bankruptcy Forum); and (2) Notice of Motion and Motion by Judgment Creditor Fred Kayne for Entry of Order Dismissing Debtors' Chapter 11 Cases ("Kayne's RJN") and takes judicial notice of Exhibits A through J attached thereto pursuant to F.R.Evid. 201.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[3] Kayne Dismissal Motion, 5:13-15.

On August 24, 2011, Kayne filed a complaint against Mense and Cottonsmith in Case No. BC468228, <u>Kayne v. Mense, et al.</u>, in the Superior Court of California, County of Los Angeles, seeking, among other things, damages for alleged breach of contract, breach of fiduciary duty, and treble damages under Cal. Penal Code § 496(c). On June 12, 2013, following a four-week trial, Kayne obtained a jury verdict against Mense and Cottonsmith on all counts. The next day, the jury awarded Kayne punitive damages against Mense in the amount of $750,000. After seven months of haggling over the form and substance of the judgment, a Third Amended Judgment was entered in the state court action on January 27, 2014, awarding (1) judgment for Kayne against Mense and Cottonsmith, jointly and severally, the sum of $2,997,698, plus prejudgment interest of $132,227; and (2) judgment for Kayne against Mense in the amount of $750,000, plus prejudgment interest of $35,881.77.[4] Five days <u>before</u> entry of the judgment, however, Mense and Cottonsmith filed their respective bankruptcy petitions.

<u>Cottonsmith</u>

On January 22, 2014, Cottonsmith filed a voluntary petition under chapter 11 in Case No. 2:14-bk-11194-PC, <u>In re Cottonsmith, LLC, Debtor</u>. Cottonsmith is no longer engaged in business. It has no employees and no income. In its schedules filed on February 26, 2014, Cottonsmith disclosed that its sole asset is the balance on deposit in a "business checking account" at Wells Fargo Bank which was $1,400,000 on the petition date. Cottonsmith has no creditors, except two creditors listed in Schedule F: (1) Kayne; and (2) Horvitz & Levy LLP, the holder of a disputed unsecured nonpriority claim for attorneys' fees in the amount of $12,142.58.

<u>Mense</u>

On January 22, 2014, Mense filed a voluntary petition under chapter 11 in Case No. 2:14-bk-11195-PC, <u>In re Raphael Mense, Debtor</u>. In his schedules filed on February 26, 2014, Mense disclosed assets totaling $20,096,615.49, consisting of interests in real property valued at

---

[4] "[T]he Judgment left open the calculation [for] costs of suit and attorneys' fees to be recovered, pending the filing of a Memorandum of Costs and motion for recovery of attorneys' fees by Kayne." <u>Id.</u>, at 10:11-13.

$10,375,000 and personal property valued at $9,721,615.49.[5] Mense has debts totaling $6,613,888.58, composed of $5,498,746.00 in secured claims and $1,115,142.58 in unsecured nonpriority claims.[6] In his Statement of Financial Affairs, Mense disclosed adjusted gross income in 2012 of $-249,097.[7] Mense receives monthly income from Social Security of $1,698 according to Schedule J.[8] His non-filing spouse receives monthly wages of $6,000. While their combined monthly income does not exceed $7,698, their monthly expenses are quite significant. Mense's monthly expenses itemized in Schedule J exceed $26,000, and include:

| Expense | Amount |
|---|---|
| Rental or home ownership expenses for residence | $12,000. |
| Home maintenance, repair and upkeep expenses | 500. |
| Electricity, heat, natural gas | 500. |
| Water, sewer, garbage collection | 500. |
| Telephone, cell phone, Internet, satellite, and cable services | 500. |
| Food and housekeeping supplies | 1,000. |
| Clothing, laundry, and dry cleaning | 1,500. |
| Medical and dental expenses | 1,000. |
| Transportation | 500. |
| Entertainment, clubs, recreation, newspapers, magazines, and books | 3,000. |
| Charitable contributions and religious donations | 500. |
| Life insurance | 1,000. |
| Health insurance | 1,000. |
| Vehicle insurance | 500. |
| Property Tax | 1,600. |
| Legal/Accounting | 500. |
| Total | $26,100.[9] |

Mense stated in Schedules I and J that he does not anticipate any increase in income or decrease in expenses in the next 12 months.

---

[5] Kayne's RJN, Exh. H, at 7-11.

[6] Id., Exh. H, at 13-20.

[7] Id., Exh. H, at 28.

[8] Id., Exh. H, at 24.

[9] Id., Exh. H, at 25-26.

Joint Administration

On February 19, 2014, the court entered an order directing joint administration of the Cottonsmith and Mense cases under Case No. 2:14-bk-11195-PC. On March 6, 2014, Mense and Cottonsmith filed an Amended Status Report pursuant to the court's Order to (1) Disclose Single Asset Real Estate; (2) File Status Report; (3) Attend Status Conference; and (4) File Monthly Interim Statements and Operating Reports entered in each case on February 12, 2014. In a declaration attached to the Amended Status Report, Mense stated under penalty of perjury:

> I am not an insolvent Debtor, even if required to pay the judgment. I explored the possibility of pledging real estate and other assets to raise the funds necessary to purchase an appeal bond, but was told that this would require a lengthy underwriting period with no assurance or guaranty that a bond would ultimately issue. Based on the speed with which Kayne was able to execute on my assets, the only viable option was to seek the protection of the Bankruptcy Court and the imposition of the automatic stay, for the duration of the period necessary to complete the appeal.[10]

In response to the court's inquiry regarding the type of plan to be proposed, Mense responded in the Amended Status Report:

> There are only a few possible scenarios that can follow from the present situation:
>
> a) The Appeal is successful with a reversal of the judgment. In this event, I will file a motion to dismiss the Chapter 11 cases and no further relief will be required.
> b) The Appellate Court orders a new trial. In this event, the matter will be retried. If re-trial is not successful, I would need to liquidate the assets necessary to pay all allowed claims.
> c) The Appeal is denied and the judgment is upheld. In this instance, I would have to liquidate those assets necessary to pay all allowed claims.[11]

The court also inquired whether any proposed plan would require the sale of assets after confirmation. Mense reiterated in the Amended Status Report:

> The extent to which assets may need to be sold in this case will turn on the outcome of the appeal. In the event that the decision of the trial court is upheld,

---

[10] Amended Status Report, 12:5-11.

[11] Id. at 12:26 – 13:6.

or if the matter is retried to the same result, assets will need to be liquidated to meet the burden imposed by the judgment.  I rely on my real estate assets and believe that in the event liquidation should be necessary, on an orderly basis, this can be accomplished.  In the event that the verdict of the Los Angeles Superior Court is reversed, then no sale of any assets will be required at all.[12]

On March 10, 2014, the court granted relief from the automatic stay under § 362(d)(1) to permit Mense and Cottonsmith to appeal the judgment obtained by Kayne in the state court action.[13]  The court also annulled the stay to the petition date so that actions taken by the parties to enter the Third Amended Judgment in the state court after the petition date did not constitute a violation of the stay.  The court prohibited enforcement of the judgment pending further order of the court.  At the hearing on March 5th, Mr. Douglas Neistat, counsel for the debtors in possession, advised the court that "$7 million of cash or cash equivalent would have to be posted in order for Mr. Mense to obtain the bond necessary to stay . . . enforcement of the judgment pending appeal."[14]  However, the parties' dispute regarding the appeal bond was left for another day.  Cottonsmith and Mense were advised by the court that they were "free to exercise all of [their] rights with respect to an appeal of the judgment . . . [a]nd that include[d] if the Debtor[s were] willing and able to do so, posting a supersedeas bond under state law to prevent collection on the judgment."[15]  Kayne's request for stay relief to enforce his judgment, having been made in opposition to the Debtors' motion, was denied without prejudice pending a properly noticed motion.[16]

On March 12, 2014, Kayne filed Kayne's Dismissal Motion and Kayne's Stay Relief Motion.  Cottonsmith and Mense filed written opposition to each of the motions on March 19,

---

[12] Id. at 15:6-11.

[13] See Intersol-Rand Fin. Corp. v. Miller Mining Co., Inc., 817 F.2d 1424, 1426 (9th Cir. 1987) ("We agree . . . with the decisions of other circuits which have stayed appeals by debtors when the original proceeding was brought against the debtor." ).

[14] Kayne RJN, Exh. J, 3:23 -- 4:1.

[15] Id., Exh. J, 22:12-16.

[16] Id., Exh. J, 22:6-11.

6

2014, to which Kayne replied on March 26, 2014.  After a hearing on April 2, 2014, the matters were taken under submission.

## II. DISCUSSION

This court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  The matters are core proceedings under 28 U.S.C. § 157(b)(2)(A), (G) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

A. <u>Lack of Good Faith is "Cause" for Dismissal of the Case and Relief from the Automatic Stay</u>

Good faith is required in the commencement and prosecution of a chapter 11 case, and the lack thereof constitutes "cause" for dismissal under § 1112(b)(1) and relief from the automatic stay under § 362(d)(1).  <u>Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Dev. Co.)</u>, 779 F.2d 1068, 1071-72 (5th Cir. 1986); <u>see</u> <u>Marsch v. Marsch (In re Marsch)</u>, 36 F.3d 825, 828 (9th Cir. 1994) ("Although section 1112(b) does not expressly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal."); <u>State of Idaho v. Arnold (In re Arnold)</u>, 806 F.2d 937, 939 (9th Cir. 1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay.").  The good faith requirement "deter[s] filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws."  <u>Marsch</u>, 36 F.3d at 828.  As the Fifth Circuit observed in <u>Little Creek</u>:

> Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start' through the orderly disposition of assets to satisfy creditors.  Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.  Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.  Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.  Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and

7

turnover of assets) available only to those debtors and creditors with "clean hands." Id. at 1071-72.

Bankruptcy courts must divine "'[t]he existence of good faith [based upon] on an amalgam of factors and not upon a specific fact.'" See Marsch, 36 F.3d at 828, quoting Arnold, 806 F.2d at 939. The determination "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." Little Creek, 779 F.2d at 1072. "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions . . . [p]articularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984). Ultimately, "[t]he test is whether the debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." Marsch, 36 F.3d at 828.

B. Standard for Dismissal Under § 1112(b)

Section 1112(b)(1) states, in pertinent part, that "on request of a party in interest and after notice and a hearing, . . . the court shall convert a [chapter 11] case to a case under chapter 7 or dismiss a [chapter 11] case, whichever is in the best interest of creditors and the estate, if the movant establishes cause ...." 11 U.S.C. § 1112(b)(1) (emphasis added). "Cause" is defined in § 1112(b)(4), but the list contained in § 1112(b)(4) is illustrative, not exhaustive. See Albany Partners, 749 F.2d at 674. If the motion is predicated on bad faith, "[t]he moving party has the initial burden of making a prima facie case to support its allegations of bad faith." In re Avalon Hotel Partners, LLC, 302 B.R. 377, 384 (Bankr. D. Or. 2003). "Once such a showing has been made, the burden shifts to the debtor to establish that its chapter 11 case was filed in good faith." Id.; see In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004) ("Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith, and the burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith."). If cause is established, the court has discretion to dismiss the case if to do so

8

would serve the best interest of creditors and the estate. See Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006) ("[O]nce a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of creditors and the estate.'") (citation omitted)); In re Erkins, 253 B.R. 470, 474 (Bankr. D. Idaho 2000) ("The decision whether to dismiss a Chapter 11 case as a bad faith filing is subject to the discretion of the bankruptcy court.").

C. Relief from the Automatic Stay

Section 362(d)(1) directs the court to grant relief from the automatic stay upon a showing of "cause." 11 U.S.C. § 362(d)(1). "What constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (9th Cir. BAP 2009); see Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) ("'Cause' has no clear definition and is determined on a case-by-case basis."). "[T]he automatic stay promotes the goal of equality of distribution by preventing a piecemeal dismemberment of the bankruptcy estate, while assuring that a debtor in possession has an opportunity to use property necessary for an effective reorganization." Truebro, Inc. v. Plumberex Specialty Prods, Inc. (In re Plumberex Specialty Prods., Inc.), 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004). "[A] bankruptcy court must be cognizant 'of the entire bankruptcy case and its progress,' and adjudicate 'stay relief issues from this perspective.'" Id., at 557, quoting Santa Clara Cnty. Fair Ass'n v. Sanders (In re Santa Clara Cnty. Fair Ass'n), 180 B.R. 564, 567 (9th Cir. BAP 1995).

"To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." Plumberex, 311 B.R. at 557 (footnote omitted). "Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." Id. "The decision whether to grant or deny stay relief is within the broad discretion of the bankruptcy court." Id. at 558; see Kronemyer, 405 B.R. at 919 ("The decision of a bankruptcy court to grant relief from the automatic stay under § 362(d) is reviewed for abuse of discretion.").

D.  <u>Chapter 11 in Lieu of an Appeal Bond</u>

Kayne seeks dismissal of the chapter 11 petitions filed by Cottonsmith and Mense or, alternatively, relief from the automatic stay to enforce and collect his judgment.  Kayne argues that:

> Cottonsmith has no ongoing business, has no employees, has no income, has no assets other than cash (which is quickly being dissipated by the Debtors) and has no legitimate creditors other than Kayne.  Mense, on the other hand, has the financial ability to either satisfy the Judgment or obtain an appeal bond to pursue an appeal of the Judgment as required by California state law.  The Debtors' utilization of the bankruptcy process to avoid the enforcement of the Judgment and to circumvent the requirement to post an appeal bond to stay the enforcement of the Judgment pending appeal, without any legitimate reorganization purpose, was in bad faith, and therefore "cause" exists under 11 U.S.C. § 1112(b) to dismiss the Debtors' bankruptcy cases.[17]

Cottonsmith and Mense freely admit that their chapter 11 petitions were filed for the specific purpose of staying Kayne's efforts to enforce his judgment pending an appeal, but they deny that their bankruptcy petitions were filed in bad faith.  Cottonsmith and Mense argue that they "made good faith efforts to obtain an appeal bond, did not have immediately available funds to post that bond, and filed their bankruptcy cases with the desire to restructure and reorganize their assets and liabilities so that such liquid funds can be made available to provide payment to creditors in full regardless of the outcome of their appeal."[18]

In California, a party seeking to appeal from a judgment entered in state court must post a bond to forestall enforcement and collection of the judgment pending the appeal.  <u>See</u> Cal. Code Civ. Proc. § 917.1.  The purpose of the statute is "to protect the judgment won in the trial court from becoming uncollectible while the judgment is subjected to appellate review" and to preserve for the "successful litigant . . . an assured source of funds to meet the amount of the money judgment, costs and prejudgment interest after postponing enjoyment of a trial court victory."  <u>Grant v. Superior Court</u>, 225 Cal.App.3d 929, 934 (1990).

---

[17]  Kayne's Dismissal Motion, 4:18-26.

[18]  Debtors' Opposition to Motion for Entry of Order Dismissing Debtors' Chapter 11 Cases ("Opposition"), 2:13-16.

The Ninth Circuit has yet to decide the specific issue of whether a debtor, who seeks to appeal an adverse state court judgment, can file a chapter 11 petition and use the automatic stay to trump state law requirements for an appeal bond. See Marsch, 36 F.3d at 829 ("We need not decide whether the bankruptcy laws can be used to skirt state court procedural laws in this manner. . . ."). Cf. Integrated Telecom Express, 384 F.3d at 128 ("Indeed, if there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay to avoid posting an appeal bond in another court."). In Marsch, however, the Ninth Circuit upheld a bankruptcy court's determination that a debtor, who filed a chapter 11 petition to delay collection of a $2,557,000 restitution judgment and to avoid posting an appeal bond, did so in bad faith. 36 F.3d at 829. In making its determination, the Ninth Circuit stated:

> Even assuming a Chapter 11 petition may be used for this purpose when enforcement of a judgment would cause severe business disruption, a question we leave open, this would not help the debtor here. The bankruptcy court found that the debtor had the financial means to pay the judgment. Moreover, because she wasn't involved in a business venture, the judgment didn't pose any danger of disrupting business interests . . . . Dismissal of the petition for cause pursuant to § 1112(b) was proper.

Id.

The majority of bankruptcy courts tackling this issue have held that the filing of a chapter 11 petition as a litigation tactic to circumvent the requirement of an appeal bond in state court litigation is in bad faith. See, e.g., In re Liptak, 304 B.R. 820, 843 (Bankr. N.D. Ill. 2004); Erkins, 253 B.R. at 477; In re Boynton, 184 B.R. 580, 584 (Bankr. S.D. Cal. 1995); In re Byrd, 172 B.R. 970, 974 (Bankr. D. Wash. 1994); Mueller v. Sparklet Devices, Inc. (In re Sparklet Devices, Inc.), 154 B.R. 544, 549 (Bankr. E.D. Mo. 1993); In re Harvey, 101 B.R. 250, 252 (Bankr. D. Nev. 1989); In re Karum Group, Inc., 66 B.R. 436, 439 (Bankr. W.D. Wash. 1986); In re Smith, 58 B.R. 448, 451 (Bankr. W.D. Ky. 1986); In re Wally Findlay Galleries (New York), Inc., 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984). Bankruptcy courts have also reached the opposite conclusion. See, e.g., In re Dillon, 322 B.R. 353, 363 (Bankr. N.D. Ill. 2005); In re Fox, 232 B.R. 229, 240 (Bankr. D. Kan. 1999); In re Holm, 75 B.R. 86, 88 (Bankr. N.D. Cal. 1987); In re Alton Telegraph Printing Co., 14 B.R. 238, 241 (Bankr. S.D. Ill. 1981). When a debtor

files chapter 11 to dodge the requirement for an appeal bond, a court's determination of good faith typically hinges on the following factors:

1. Whether the debtor is a viable business which would suffer severe disruption if enforcement of the judgment was not stayed; and the chapter 11 petition was filed to preserve its status as an ongoing concern and to protect its employees and creditors;[19]

2. Whether the debtor had financial problems on the petition date, other than the adverse judgment;[20]

3. Whether the debtor has relatively few unsecured creditors, other than the holder of the adverse judgment;[21]

4. Whether the debtor has sufficient assets to post a bond to stay the judgment pending appeal;[22]

---

[19] See, e.g., Erkins, 253 B.R. at 475 ("Debtors have not shown by a preponderance of the evidence that they are actually involved in the operation of a business."); Boynton, 184 B.R. at 584 ("The vast majority of the estate's assets are liquid in an investment account . . . [n]ot dependent upon a factory producing widgets or a company promoting services to customers, thereby earning new revenues in the future."); Sparklet Devices, 154 B.R. at 547 ("[T]his Debtor was not an operating business and had no employees when it filed its bankruptcy petition."); Holm, 75 B.R. at 87 ("[A] Chapter 11 filing is in good faith and may be used to replace an appeal bond if the judgment against the debtor is so large that the debtor faces severe disruption of his business if enforcement of the judgment is not stayed.").

[20] See, e.g., Erkins, 253 B.R. at 476 ("Other than the Creditor's claim, there is no indication in the schedules or record that Debtors could not pay all of their creditors in full from their available assets."); Byrd, 172 B.R. at 972 ("[D]ebtor testified that all of his financial obligations were current and that he had no financial problems until the entry of the judgment."); Karum Group, 66 B.R. at 438 ("At the time of the filing the debtor had no financial problems except for Deacon Group's judgment.").

[21] See, e.g., Erkins, 253 B.R. at 475 ("Debtors have few debts besides that of the Creditor, and little in the way of unsecured debts."); Sparklet Devices, 154 B.R. at 550 ("Debtor's schedules reveal that Debtor has relatively few unsecured creditors other than the debt to Mr. Mueller.").

[22] See, e.g., Boynton, 184 B.R. at 583 ("[I]t is not at all clear that debtors could not have posted the requisite bond from their over $5 million in assets in their investment account, alone."); Byrd, 172 B.R. at 973 ("[T]he debtor's financial situation in the face of the judgment is dire, and it appears unlikely that he could post a bond in the full amount of the judgment."); Holm, 75 B.R. at 87 ("It is clear that the debtor could easily satisfy the judgment or post an appeal bond merely by liquidating some of his real estate holdings."); Alton Telegraph, 14 B.R. at 241

5. Whether the debtor acted in good faith to exhaust all efforts to obtain a bond to stay the judgment pending appeal;[23]

6. Whether the debtor intends to pursue an effective reorganization within a reasonable period of time, or whether the debtor is unwilling or unable to propose a meaningful plan until the conclusion of the litigation;[24] and

7. Whether assets of the estate are being diminished by the combined ongoing expenses of the debtor, the chapter 11 proceedings, and prosecution of the appeal.[25]

---

("[Debtor] admits that it was not able to obtain a supersedeas bond to forestall execution because of the amount of the judgment in relation to the [Debtor's] net worth.").

[23] See, e.g., Dilling, 322 B.R. at 362 ("Dilling is making every effort to post security during her appeal, but so far remains unsuccessful."); Erkins, 253 B.R. at 474 ("The record is unclear whether Debtors are continuing in earnest to secure a bond."); Fox, 232 B.R. at 235 ("Because Debtor was unable to obtain the bond, and was forced to file bankruptcy in order to preserve his companies as going concerns, the Court will not dismiss his bankruptcy for that reason alone."); Boynton, 184 B.R. at 583 ("[W]e do not know what the amount of the bond required by the Tax Court would have been because the debtors never asked the Tax Court to set a bond.").

[24] See, e.g., Erkins, 253 B.R. at 476 ("Debtors' sole objective is to simply stay Creditor's collection efforts while they continue to fight on appeal without the financial burden associated with posting a proper appeal bond. . . and only if, the appeal turns out badly for them will Debtors address the need to actually pay Creditor's claim."); Byrd, 172 B.R. at 973 ("[D]ebtor has already filed a Chapter 11 plan and claims that he will need to remain in Chapter 11 and pay his debts under a confirmed plan even if the judgment against him is reversed on appeal."); Sparklet Devices, 154 B.R. at 548 ("[O]n the date of filing, debtor had no business to reorganize."); Karum Group, 66 B.R. at 438 ("During oral argument, debtor's counsel also remarked that if the debtor is successful in its appeal, the bankruptcy will be dismissed."); Wally Findlay Galleries, 36 B.R. at 851 ("The debtor is unable to propose a meaningful plan of reorganization until its litigation with International and Realty is resolved."); Alton Telegraph, 14 B.R. at 241 ("The debtor has filed a plan of reorganization, and the case is progressing through the court in an orderly and expeditious manner.").

[25] See, e.g., Erkins, 253 B.R. at 476 ("[W]hile Creditor may be eventually be paid, it gains nothing through the pendency of the Chapter 11."); Boynton, 184 B.R. at 584 ("[T]he debtors posted no bond, paid a chapter 11 filing fee, and asserted the right to utilize the assets the [IRS] otherwise would have seized to continue to pay the debtors own living expenses and, more significantly, to pay the expenses of prosecuting the appeal.").

E. <u>Cottonsmith Lacked Good Faith in Filing Its Chapter 11 Petition</u>

Cottonsmith is not an operating business. It ceased doing business and liquidated its assets in 2011. Cottonsmith has no employees, no cash flow, and no sources of income. It has no reasonable prospects for the conduct of business in the future. Cottonsmith has only 1 unsecured creditor besides Kayne, and that creditor holds a relatively small disputed unsecured nonpriority claim. Cottonsmith's remaining asset is a business checking account at Wells Fargo Bank, and the funds in that account are being depleted by Mense. According to Cottonsmith's Monthly Operating Report No. 2 filed on April 9, 2014, the balance in the account has decreased from $1,400,000 to $1,118,082.70 since the filing of the petition. Cottonsmith's bankruptcy was filed for the purpose of preventing Kayne, its primary creditor, from seizing Cottonsmith's cash which Mense is now using to pay his personal expenses and to fund the appeal.[26] "Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation . . . ." <u>Little Creek</u>, 779 F.2d at 1073.

F. <u>Mense Lacked Good Faith in Filing His Chapter 11 Petition</u>

Mense has not shown that chapter 11 relief is necessary to protect a viable business. Although he lists his occupation in Schedule J as "self-employed," Mense does not operate a business nor is he involved in the management of an entity engaged in business. He did not list any gross receipts or business expenses in his Chapter 11 Statement of Current Monthly

---

[26] On February 18, 2014, Mense filed an application to employ Hillel Chodos ("Chodos") as special appellate counsel to represent Mense and Cottonsmith in conjunction with the appeal of Kayne's judgment. In a declaration filed in support of the application, Chodos stated under penalty of perjury that Mense had paid him a $250,000 retainer prior to bankruptcy. Application of Debtor and Debtor-in-Possession to Employ Hillel Chodos as Special Appellate Counsel, 4:24. However, Mense testified at the § 341(a) meeting of creditors that Cottonsmith paid the $250,000 retainer to Chodos. Mense further testified that Cottonsmith continues to pay certain expenses for Mense, in his capacity as the managing member of the corporation, including expenses for automobile insurance, health insurance, and a cell phone, despite the fact that the corporation is no longer in business, has no source of income, and no cash flow. Kayne Dismissal Motion, at Exh. 5, 19:9-20:22.

Income,[27] and he admits that he has no employees.[28] Mense invests in real estate projects and businesses while collecting social security. His chapter 11 petition was not filed to preserve the status of an ongoing business or to protect the employees and creditors of a business.

It is undisputed that Mense is solvent. His schedules reveal a net worth in excess of $13.4 million. Other than Kayne's judgment, Mense had no financial problems when he commenced his chapter 11 case. He has no tax obligations. Mense was current in the payment of all secured debt on the petition date. He remains current on such debt.

Notwithstanding the disclosures in Schedule F, Mense actually has few unsecured creditors other than Kayne. Azami Investments, Inc., who is listed in Schedule F as the holder of an unsecured non-priority claim in the amount of $844,000, is the contractor retained by Mense to complete an extensive renovation of his residence. Debtor's counsel confirmed at the hearing that the renovation is underway and that the claim of Azami Investments, Inc. will be paid in full at the end of the job. The only other unsecured claims are: (1) the disputed claim of Horovitz & Levy LLP; (2) a claim of Mense's accountant, Ofir Alfassi for $4,000 in unpaid fees; and (3) a claim for the balance of $255,000 due on a loan from Mense's nephew, Ronen Mense.[29] Mense has the present ability to pay these claims in full from available assets.

Mense admits that the purpose of the filing was to avoid posting an appeal bond, despite the fact that he has the net worth to either satisfy the judgment from his assets or to post the bond required by California law. Mense asserts on behalf of himself and Cottonsmith that they made "a good faith effort to secure a bond, and . . . [determined] there were insufficient liquid assets to do so."[30] In his Opposition, Mense estimated the cost of an appeal bond to be approximately $6,817,500 and testified:

---

[27] Kayne RJN, Exh. H, at 36.

[28] Opposition, 5:8.

[29] Kayne RJN, Exh. H, at 18-20.

[30] Opposition, 8:5-6.

15

> I did not have access to $6,817,500 on January 27, 2014 and could not raise a sum equal to that without liquidating fractional interests in entities which own real estate and other assets, all of which are subject to contract provisions dealing with the transfer and sale of ownership interests. I was told that while money can be borrowed from non cash assets, the underwriting period could be long, without any assurance or guaranty of success. In addition, if a bond applicant wants to use non cash assets, then the bond premium increases to four percent (4%) per annum. This would mean a bond, in excess of $7 million. I did not have the ability to fund this amount when the judgment was entered, nor do I have it now without engaging in a process by which assets will need to be liquidated, which I am prepared to do as needed.[31]

The jury rendered its verdict in the state court action on June 12, 2013. Cottonsmith and Mense filed their respective chapter 11 petitions on January 22, 2014. There is no evidence regarding the specific efforts undertaken by Mense or Cottonsmith during the intervening six month period to search for and obtain an appeal bond. Mense does not disclose: (1) the name of each surety company consulted; (2) the date of consultation; (3) whether an application for an appeal bond was made to a surety company; (4) the terms of an appeal bond, if any, offered pursuant to the application; or (5) the reasons why an appeal bond was declined in response to the application. Mense simply states that he "was told" by an unidentified individual or entity that an appeal bond would be costly and the underwriting period would be lengthy. At the hearing, Debtors' counsel stated that he made one unsuccessful inquiry by telephone to Bond Services on behalf of the Debtors shortly before the petition date, but was unable to provide any specific information in response to the court's inquiry regarding Mense's attempts to secure an appeal bond between June 12, 2013 and January 22, 2014.

Moreover, there is no evidence that either Cottonsmith or Mense have made any effort to secure an appeal bond since the commencement of their bankruptcy cases. Mense testified that he was prepared to liquidate assets "as needed," but Debtors' counsel confirmed at the hearing that Mense's use of the term "as needed" meant that liquidation of any assets depended upon the outcome of the appeal. In sum, Mense has over $4 million in cash, but is unwilling to borrow

---

[31] Id. at 17:8-17.

against his real estate investments or to liquidate any portion of his real estate holdings to provide the additional cash necessary to obtain an appeal bond.

Debtors assert that they "are prepared to file disclosure statements and plans of reorganization as quickly as the Court directs."[32] But their claims are belied by Mense's sworn statement in support of the Debtors' Amended Status Report filed on March 6, 2014, in which Mense made it clear that Debtors do not intend to propose a meaningful plan or to liquidate any of Mense's real property interests pending the outcome of the appeal.[33] At the § 341(a) meeting of creditors, Mense testified that the appeal would take "between 18-24 months" to be fully resolved.[34] If the appeal is successful, the Debtors intend to dismiss their bankruptcy cases. If Kayne's judgment is reversed on appeal and the case is remanded for a new trial, Debtors do not intend to propose a plan or to liquidate any real property interests pending a retrial and the outcome of any appeal thereafter.

In the meantime, the assets of each bankruptcy estate are being diminished by the combined ongoing expenses of the Debtors, the chapter 11 cases, and the cost of the appeal. The balance in Cottonsmith's account has shrunk approximately $300,000 since the petition date due to the payment of a $250,000 retainer to Chodos and Mense's personal expenses. Mense is completing a major renovation of his residence at a cost of nearly $1 million and drawing nearly $20,000 a month from his investment account to meet the deficiency between his monthly income and expenses. Assuming the appeal lasts 24 months, Mense will have drawn nearly $1.5 million from cash reserves just to complete construction and pay monthly expenses alone. As the court noted in Boynton:

> There is no downside to their pursuit of the appeal which, in effect, is being prosecuted using funds the [judgment creditor] otherwise already would have seized. In practical effect, the [judgment creditor] is funding the appeal against

---

[32] Opposition, at 3:17-19; 7:9-11.

[33] See footnotes # 10-12, supra.

[34] Kayne's RJN, Exh. J, 25:22-25.

itself while it is prevented from seizing those funds and while the debtor avoids the requirement of an appeal bond.

184 B.R. at 584; see Erkins, 253 B.R. at 476 ("If Creditor's judgment is affirmed on appeal, the Court suspects that Creditor will have received no benefit from the bankruptcy, but will have suffered additional delay in the enforcement of its rights.").

Based on the foregoing, the court concludes that Cottonsmith and Mense are using their bankruptcy cases to re-litigate, not to reorganize. When they commenced their respective cases, Cottonsmith and Mense had no intention to "effect a speedy, efficient reorganization on a feasible basis." See Marsch, 36 F.3d at 828. Instead, Cottonsmith and Mense invoked the chapter 11 process as a litigation tactic to avoid the posting of an appeal bond. The filing of each chapter 11 petition was in bad faith.[35]

G. There is a Continuing Loss to or Diminution of Each Bankruptcy Estate, and the Absence of a Reasonable Likelihood of Rehabilitation

"Cause" for dismissal or conversion of a chapter 11 case includes "a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). With respect to the first element, "[t]here need not be a significant diminution in the estate to satisfy Section 1112(b)[1]." In re East Coast Airways, Ltd., 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992). "All that need to be found is that the estate has suffered some diminution in value." Id.; see In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988) ("All that need be found is that the estate is suffering some diminution in value."). "In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow -- including that resulting only from administrative expenses – effectively

---

[35] "[C]ourts are not required to retain cases on their dockets, cases which were not filed to achieve valid legitimate purposes designed by the rehabilitative provisions of Chapter 11, and to do so would be to disregard the basic overriding concept that the system was designed only to achieve valid and legitimate purposes and should not be used for purposes inconsistent with the overall policy aims of Chapter 11. Thus, if it appears at the outset there is no reasonable expectation that the financial situation of the debtor can be successfully repaired through the reorganization process, it is clear that such case is ripe for dismissal for 'cause,' . . . ." Matter of Bock, 58 B.R. 374, 378-79 (Bankr. M.D. Fla. 1986).

comes straight from the pockets of the creditors." Loop Corp. v. U.S. Trustee, 379 F.3d 511, 516 (8th Cir. 2004), cert. denied, 543 U.S. 1055 (2005).

"Rehabilitation 'contemplates the successful maintenance of the debtor's business operations.'" In re Vallambrosa Holdings, LLC, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009) (citation omitted). A reasonable likelihood of rehabilitation is absent when the debtor's business operations do not justify continuance of the reorganization effort. See, e.g., In re LG Motors, Inc., 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009); Vallambrosa Holdings, 419 B.R. at 89; In re Original IFPC Shareholders, Inc., 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004). "Because the debtors here [intend] to liquidate their assets rather than restore their business operations, they [have] no reasonable likelihood of rehabilitation." Loop Corp., 379 F.3d at 516; see In re Gonic Realty Trust, 909 F.2d 624, 627 (1st Cir. 1990) ("[W]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business.").

Neither Cottonsmith or Mense have a business to rehabilitate. Debtors filed chapter 11 with the intention of using the automatic stay as a substitute for an appeal bond, and intend to liquidate assets as necessary in chapter 11 to pay claims only after all efforts to reverse Kayne's judgment on appeal have been exhausted. Because Cottonsmith has no income and Mense's personal expenses exceed his income, the cash in each estate continues to dissipate as the appeal takes its course largely due to Mense's significant personal expenses, accruing administrative expenses, and the cost of the appeal. There is a continuing loss to or diminution of each estate, and no reasonable likelihood of rehabilitation in either case.

H. Dismissal is in the Best Interests of Creditors and the Estate

Once cause is established, the court must "choose between dismissal or conversion, 'whichever is in the best interest of creditors and the estate.'" In re Staff Inv. Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1993). "The standard for choosing conversion or dismissal based on 'the best interest of creditors and the estate' implies a balancing test to be applied through case-by-case analysis." Id.; see Rand v. Porsche Fin. Servs., Inc. (In re Rand), 2010 WL 6259960, *10 (9th Cir. BAP 2010) ("Upon determining cause exists and that there are no unusual circumstances to negate dismissal or conversion, the bankruptcy court must engage in a

'balancing test' to determine whether appointment of a Chapter 11 Trustee, conversion, or dismissal is 'in the best interests of creditors and the estate.'").

With respect to both Cottonsmith and Mense, dismissal rather than conversion is in the best interest of creditors. Kayne, who is the creditor holding the largest unsecured nonpriority claim in each case, favors dismissal. No creditor or other party in interest favors conversion or opposes dismissal. Cottonsmith has no creditors, except Kayne and Horvitz & Levy LLP. Mense is solvent and was free of financial problems when he commenced his chapter 11 case, except for the Kayne judgment. Mense's secured debt is current and there are no unsecured priority claims in either case. Dismissal is also in the best interest of the estate because the economic value of the respective estates would diminish rather than improve if the cases either remained in chapter 11 or were exposed to the significant administrative fees and costs associated with a conversion to chapter 7. See Staff Inv. Co., 146 B.R. at 261 ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.").

## CONCLUSION

Based on the reasons stated, the court will grant Kayne's Stay Relief Motion and lift the automatic stay for cause as to Mense and Cottonsmith under 11 U.S.C. § 362(d)(1). The court will also grant Kayne's Dismissal Motion and dismiss the jointly administered bankruptcy cases of Mense and Cottonsmith for cause pursuant to 11 U.S.C. § 1112(b)(1) and (4)(A).

The court will enter separate orders consistent with this Memorandum Decision.

\###

Date: April 15, 2014

Peter H. Carroll
United States Bankruptcy Judge